IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| FRANKIE BROWN, | ) | |
| | ) | |
| Plaintiff, | ) | 07 C 6490 |
| | ) | |
| v. | ) | JUDGE DOW |
| | ) | |
| CITY OF MARKHAM and City of Markham Police Officers HARRIS, D. Walker (Star # 526), and UNKNOWN MARKHAM POLICE OFFICERS | ) ) ) ) | |
| | ) | JURY TRIAL DEMANDED |
| Defendants. | ) | |

## PLAINTIFF'S MOTION TO COMPEL

Plaintiff FRANKIE BROWN, by his counsel, LOEVY & LOEVY, moves this Court for an Order compelling Defendant City of Markham to produce information regarding a supposed confidential witness who allegedly provided information to Defendants about Plaintiff:

### Introduction

On May 30, 2007, several Markham police officers burst into Plaintiff's home pointing their weapons in Plaintiff's face. Plaintiff, a forty-seven year old longtime Markham resident, was handcuffed and detained while the Defendant Officers searched his residence. Plaintiff alleges that when the Defendants discovered that he is HIV positive during their search of his medicine cabinet, the search devolved into a homophobic free-for-all of the worst kind. According to Plaintiff, the Defendants began using derogatory language, such as "I'll sleep better tonight knowing there is one less fag on the street"; "He is one of those dick-in-the-booty boys"; "We shouldn't be

touching him, he takes it in the ass and sucks dick"; and "What does a fag like you need with a lawyer." See Dckt. No. 12 ¶¶5-9.

The Defendants then, in front of a number of third-party witnesses who had gathered on the street in front of Plaintiff's home, made Plaintiff stand outside his home in handcuffs, while shining a spotlight on him and a homosexual pornographic movie cover found in his bedroom. Plaintiff alleges that the Defendant Officers then informed the crowd that he was a homosexual and had HIV, using offensive language to do so. The Officers also related this private information to Plaintiff's fourteen year-old legal ward. At that time, Plaintiff had not shared his HIV status with either his ward or his neighbors. Id. ¶¶11-15.

Humiliated, Plaintiff was taken to the police station and held overnight, but was released the next day without being charged with any crime. Id. ¶¶16-17. Plaintiff subsequently brought this action.

Plaintiff challenges both the legality of the search of his home and the manner in which it was undertaken. To that end, he propounded a number of written requests to Defendants to discover why the Defendant Officers came to his home in the first place. See Exhibit A at ¶28 (Def. Resp. to Plaintiff's First Set of Requests for Production); Ex. B at ¶¶3-5, 21-22 (Def. Resp. to Plaintiff's Second Set of Requests for Production).

The defense to this claim is apparently that the Defendants were supposedly relying on a tip by an anonymous John Doe. In the Complaint for Search Warrant, Defendant Walker claims that this witness told him that he (the witness) had purchased

narcotics from Plaintiff at his house. *See* Exhibit C. The witness's "tip" is the sum total of probable cause listed in the Complaint. *Id.*

In other words, Defendants will ask the Court to grant summary judgment in their favor on the grounds that it was reasonable to have relied upon what this witness supposedly told them. The problem is that Defendants have asserted a privilege over all of this discovery. *See* Exhibit A at ¶28; Exhibit B at ¶¶3-5, 21-22. They are maintaining unilateral access over this witness, and are unwilling to allow Plaintiff to ask the witness whether he truly did tell Walker any of the foregoing, much less allow Plaintiff to conduct discovery into whether it was reasonable to have relied on this purported information.

Not surprisingly, the law does not allow such a result. As discussed below, Defendants must either (a) withdraw their privilege claim over this discovery and permit Plaintiffs to depose the witness and obtain documents relating to him; or else (b) be barred from hoping to rely upon what this witness supposedly said. In other words, Defendants cannot maintain a privilege over the identity of the witness and all documents relating to him, yet also expect to rely on this witness as the centerpiece of their defense.

I.  **Legal Standard**

Because "evidentiary privileges impede the fact-finding function by excluding relevant evidence, federal courts generally disfavor privileges." *United States v. Wilson*, 960 F.2d 48, 50 (7th Cir. 1992). As the Seventh Circuit consistently reminds us, the fact

that privileges are "in derogation of the search for the truth" means that they are to be "construed narrowly." *Jenkins v. Bartlett*, 487 F.3d 482, 490 (7th Cir. 2007)

There does exist a privilege governing the identity of a confidential government informant. *Roviaro v. United States*, 353 U.S. 53, 59 (1957). This privilege applies in civil cases too. *Hampton v. Hanrahan*, 600 F.2d 600, 637 & n.40 (7th Cir. 1979), *reversed in part on other grounds*, 446 U.S. 754. As with most privileges, however, the so-called informant privilege at issue is qualified, not absolute. *Roviaro*, 353 U.S. at 62.

In *Roviaro*, the Supreme Court opted against a fixed-rule for resolving such privilege assertions, and instead chose a balancing test that weighs the public interest in protecting the flow of information against the need of the individual seeking discovery. *Id.* The inquiry must be examined on a case-by-case basis, and the privilege must "yield[] when the identification of the informant or of a communication is essential to a balanced measure of the issues and the fair administration of justice." *Id.* ("Where the disclosure of an informer's identity... is essential to the fair determination of a cause, the privilege must give way.").

Thus, the party opposing the privilege may overcome the privilege "upon showing his need for the information outweighs the government's entitlement to the privilege." *Dole v. Local No. 1942*, 870 F.2d 368, 373 (7th Cir. 1989), citing *Hampton*, 600 F.2d at 636-37. Moreover, the burden is on the proponent to show that any harm from disclosure is likely. *Dole*, 870 F.2d at 372.

4

In *Hampton*, the Seventh Circuit concluded that disclosure of an informant's identity was essential to the fair resolution of a §1983 action arising out of allegedly unconstitutional police actions, including whether probable cause existed for the issuance of the warrant. In *Thames v. Bielecki*, 1994 WL 55656, at *2 (N.D. Ill. Feb. 23, 1994), this Court interpreted *Hampton* as follows:

> Two factors weighed heavily in the court's decision to require disclosure: (1) the considerable amount of evidence suggesting that the police had lied about either the existence of the informant or the nature and source of the information allegedly provided by the informant, and (2) the significance of information regarding the information regarding the informant to the plaintiff's ability to prove his case.

*Id.* A similar conclusion is warranted here, as Plaintiff explains.

## II. Defendants' Privilege Assertion Should Be Overruled

Applying *Bielecki* and the other cases to this one, at least four factors each weigh heavily in favor of overruling Defendants' privilege assertions: there is considerable evidence the police are lying, the information over which Defendants are asserting a privilege is at the very heart of the case, the Defendants cannot meet their burden to show that there is a risk to anyone if the privilege assertions are overruled; and Defendants have already waived the privilege. Plaintiff discusses each point in turn.

### A. The Information Over Which Defendants Are Asserting A Privilege Is At The Very Heart Of The Case

It clearly matters under the balancing test discussed above whether or not the privileged information is critical to the claims. Here, it could not be more so. The Complaint against Plaintiff lists no probable cause other than what the witness

allegedly told Walker. If the witness legitimately told these things to Walker, Plaintiff has no quarrel with the resulting search warrant. If the witness did not say the things Walker attributes to him, then Plaintiff's constitutional rights have been violated.

The privilege assertion thus effectively insulates Defendants' perfect defense from challenge. Defendants have thus pushed this witness's testimony to the forefront of the case. *See Krauser v. Scalise*, 1989 WL 158006, at *5 (N.D. Ill., Dec. 21, 1989) (finding that confidential informant's privilege did not apply because "[t]he informant in this case... is far more than a mere tipster; he is the heart of the probable cause finding."). Under those circumstances, Defendants' privilege assertion must "yield" because the "identification of the informant or of a communication is essential to a balanced measure of the issues and the fair administration of justice." *Roviaro*, 353 U.S. at 59; *Thames*, 1994 WL 55656, at *2. The Seventh Circuit has explained that the privilege cannot be maintained when the identity of the informer is directly at issue:

> [T]here is a serious factual controversy focusing on the existence or identity of Groth's informant, and a resolution of this controversy is essential to a just adjudication of plaintiffs' claims. Thus, we conclude that the public's interest in encouraging the flow of information to law enforcement officials cannot prevail in this case, and that Groth must disclose the identity of his informant.

*Hampton*, 600 F.2d at 639.

### B. Defendants Cannot Meet Their Burden To Show That The Risk Of Disclosure Would Create Any Harm

As stated above, the law places the burden on the party asserting the privilege to show that reprisal or retaliation is likely. Dole, 870 F.2d at 372. Defendants cannot come anywhere close here.

For purposes of discovery, Plaintiff has agreed to hold any information produced regarding the informant under a protective order, including one that restricts the information to attorneys' eyes only. *See* Exhibit E at 4 (March 11, 2008 letter to Defendants). Producing the information under strictest attorneys eyes' only protection appropriately balances the Defendants' privilege assertion against Plaintiff's need for the information requested. "One of the most commonly used safeguards is disclosure only to attorneys." *Autotech Tech. Ltd. P'ship v. Automationdirect.com, Inc.*, 235 F.R.D. 435, 445 (N.D. Ill. 2006). There is no need for Plaintiff himself to know the name and information pertaining to the confidential informant at this stage of the litigation. His attorneys can effectively represent his interests without divulging the information the Defendants seek to protect.

This exact relief was previously ordered by Judge Conlon in *Coleman-Johnson v. Dignan*, 1996 WL 66140, at *5 (N.D. Ill. Feb. 13, 1996). In that case, the Court ordered Defendants to identify and produce "John Doe" for the plaintiffs' attorneys only by a certain date. *Id.* The plaintiffs' attorneys were then bound to not disclose the witness's identity to anyone, including clients, without prior leave of court (which may or may not be sought, depending on how discovery proceeded).

The same result was obtained in *Hampton*, in which the Seventh Circuit ordered disclosure of the informant under a protective order. "In order to minimize both the risks to this particular informant and any adverse effects on law enforcement generally, we suggest that the appropriate parties move at the retrial for a protective order to set the terms of this disclosure." *Hampton*, 600 F.2d at 639.

Plaintiff contends that this Court should follow the well-tread path worn by the Seventh Circuit and Judge Conlon, and order disclosure of the confidential informant subject to an appropriate attorneys' eyes only protective order.

C.  **The Defendant Officers' Use of Informants Is Suspect**

As stated earlier, it is undisputed that, although Defendants claim Plaintiff was dealing drugs out of his home, and he was arrested on that basis, he was released without ever being charged with a crime.[1] Plaintiff's point is that if he were actually caught dealing drugs to an undercover informant, he would have been charged with a crime.

To Plaintiff's surprise, Defendants are now claiming that the reason Plaintiff was not charged with a crime was because he himself became an informant for the Department. Plaintiff absolutely and unequivocally denies that he did any such thing. Accordingly, Plaintiff requested all documents related to any such information

---

[1] The parties dispute whether the search of his home turned up any evidence of illegal activity. Plaintiff maintains that Defendants found absolutely nothing illegal in his home despite searching for hours. Defendants contend that they found narcotics residue.

provided by Plaintiff. Although the Markham police department requires its officers to create a master file for every confidential informant and meticulously document every contact, the Defendants never created any paperwork about Plaintiff supposedly giving them information about someone else's criminal activity. *See* Exhibit D (Markham Police Department Procedural Manual on Informants).[2]

This is no small point. Defendant Walker is claiming that Plaintiff told him about crimes committed by other citizens but never wrote down a single thing that Plaintiff supposedly told him. Defendants have admitted that there exists no document demonstrating that Plaintiff was the person who supposedly informed against other citizens. *See* Exhibit B ¶¶8-9, 23. Defendants have also admitted that they never opened a file for Plaintiff as an informant with the Markham police department. *See id.* That file should have contained Plaintiff's Confidential Informant Information Record form, his photo, all case reports in which he provided information/assistance, and all correspondence related to him, among other documents. *See* Exhibit D at 2.

The fact that Plaintiff did not provide information to Defendant Walker (if true) suggests that the Defendants are playing fast and loose with "confidential" informers. From all appearances, Defendants are accusing persons of criminal activity and hiding behind phantom "confidential informants" to insulate themselves from being held

---

[2] After spending the night in a cell at the police station, Plaintiff eventually agreed to sign an agreement to act as an informant in order to be released from police custody, almost twenty-four hours after he was first arrested. Plaintiff never, however, acted as an informant or provided any information about criminal activities to any member of the Markham police department.

9

accountable for their actions. "The assertion of informer's privilege by a law enforcement official defending against a civil suit for damages based on his own alleged official misconduct should be scrutinized closely." *Hampton*, 600 F.2d at 638. Plaintiff should be permitted to determine whether the confidential informant exists and, if so, really purchased narcotics from Plaintiff.

III.   **Alternatively, If Defendants Are Permitted To Continue To Assert The "Shield" Of A Privilege Over This Information, Then Defendants Should Not Be Allowed To Rely On The "Sword" Of What They Were Supposedly Told**

It is well-settled that a party may not shield subjects from probing discovery yet expect to rely on that evidence as proof of their claim or defense. The most obvious scenario where this occurs is the attorney-client privilege context. *See, e.g., Chicago Meat Processors v. Mid-Century Ins. Co.*, 1996 WL 172148, at *4 (N.D. Ill. April 10, 1996) ("Mid-Century must recognize that it cannot have it both ways. It cannot seek refuge in consultation with counsel as evidence of their good faith, yet prevent CMP from discovering the contents of the communication."); *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1162 (9th Cir. 1992) (because the "privilege which protects attorney-client communications may not be used both as a sword and a shield," party asserting privilege may not rely on the advice of counsel as part of a defense). Put another way, Defendants cannot have it "both ways." *United States v. Workman*, 138 F.3d 1261, 1264 (8th Cir. 1998) ("The attorney-client privilege cannot be used both as a shield and a sword and Workman cannot claim in his defense that he relied on Levad's advice without permitting [the other side] to explore the substance of that advice."); *Latuga v.*

*Hooters, Inc.*, 1994 WL 329910, at *1 (N.D. Ill. July 8, 1994) ("[T]he attorney-client privilege cannot be used as both a sword and a shield. Where the [party] puts a matter in issue, he cannot invoke the attorney-client privilege to prevent the [opponent] from obtaining information necessary to [rebut].").

This principle obviously applies to other privileges as well. *See Harris v. City of Chicago*, 266 F.3d 750, 754 (7th Cir. 2001) (Fifth Amendment privilege); *Santelli v. Electro-Motive*, 188 F.R.D. 306, 308 (N.D. Ill. 1999) (psychotherapist-patient privilege).

Applying that principle to the "informant's privilege," the result is the same. *Jones v. United States*, 9 F.Supp.2d 1119, 1139 (D.Neb. 1998) (applying the same principle following assertion of informer's privilege). Judge Kennelly reached that very conclusion in *Manning v. Buchan*, 357 F.Supp.2d 1036 (N.D. Ill. 2004) (precluding "defendants from relying on information from sources whose identities they have chosen to protect").

In *Manning*, the defendants resisted discovery into the identity of the informant who supposedly provided them information suggesting that Mr. Manning was a suspect in multiple murders. *Id.* at 1046-47. Because the issue was more peripheral (unlike here, it was not the entire basis for any probable cause determination), Judge Kennelly decided not to compel the informant's identity. *Id.*

However, Judge Kennelly also held that once the defense prevented the other side from investigating whether the informant really said what he allegedly said, the defense could not expect to rely on the purported information at trial. *Id.* at 1048-49

11

("Ordinarily, when a party asserts a privilege to preclude its opponent from obtaining information in discovery, it relinquishes the ability to use that information in its favor at trial.") (citing some of the sword/shield cases cited above). "The rationale is that it is unfair to allow a party to make selective use of information helpful to him while blocking inquiry into other aspects of the information that might be unhelpful." *Id.*

The court relied upon *Jones*, 9 F.Supp.2d at 1139 (applying the same principle following assertion of informer's privilege). As Judge Kennelly explained, *Jones* involved a claim for wrongful disclosure of tax information by an IRS agent to a confidential informant. The court sustained the defendant's assertion of the informer's privilege, and as in this case, "at the government's insistence... prohibited the plaintiffs from discovering the identity of the informant." *Id.* For this reason, the court precluded the defendant from arguing that plaintiff had failed to prove who had received the disclosure, stating that the defendant could not use the privilege as both a shield and a sword. *Id.*

The same was true in *Manning*, and it is here as well. Judge Kennelly's conclusion is dead on:

> A trial in which the defendants were permitted to declare before the jury that unnamed sources had [given them information] would be an adversary proceeding in name only. It would be grossly unfair to require Manning to abide the defendants' use of the informants' claims without any ability to reply effectively. ****
> The [defendants] resisted discovery of the basic information that Manning needed to attempt to refute the contention that the confidential informants' information contributed to their decision to place an informant (Dye) with Manning in the Cook County Jail [among other things]. Defendants seem to think that having succeeded in sustaining the

> privilege, they now have free rein to use the unnamed informants' information for whatever purpose they believe is appropriate. The defendants, who cite no authority for this proposition, have it backwards. Having succeeded in sustaining the privilege and in stymieing Manning's ability to challenge their reliance on the informants' information, defendants have relinquished the right to use that information for their own benefit at trial.

*Manning*, 357 F.Supp.2d at 1049-50.

In sum, if Defendants continue to elect to assert a privilege over this witness (thereby blocking all discovery) and if the Court agrees with the Defendants that the privilege cannot be pierced by Plaintiff, then Defendants must be stuck with the consequences. In this case, that means Defendants should be barred from relying on what this witness purportedly said and did.

## IV. Compliance with Local Rule 37.2

The parties are at impasse on the issue of producing the requested confidential informant documents. In an effort to amicably resolve this dispute, Plaintiff has outlined his position to Defendants in writing, including his agreement to hold the requested information in strictest attorneys' eyes only confidence. *See* Group Exhibit E (letters to Defendants dated March 11, March 24, and May 27). Plaintiff has conferenced with Defendants on two occasions, but Defendants have stood on their objections, stating that they will only produce the requested documents pursuant to a Court Order. *See* Exhibit E (letter to Defendant dated May 27). Accordingly, Plaintiff brought this matter before the Court for adjudication.

## Conclusion

For the foregoing reasons, Defendants' privilege assertions should be overruled, and they should be compelled to respond to Plaintiff's First Set of Requests for Production No. 28 and Plaintiff's Second Set of Requests for Production Nos. 3-5, 21-22; or, alternatively, Defendants should be barred from relying on any testimony about what this witness supposedly said or did.

Respectfully Submitted,

\_\_\_/s/Russell Ainsworth\_\_\_

Arthur Loevy
Jon Loevy
Russell Ainsworth
Matthew Jenkins
Loevy & Loevy
312 N. May St., Suite 100
Chicago, IL 60607
(312) 243-5900