IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| FRANKIE BROWN, | ) | |
| | ) | |
| Plaintiff, | ) | 07 C 6490 |
| | ) | |
| v. | ) | JUDGE DOW |
| | ) | |
| CITY OF MARKHAM and City of Markham Police Officers HARRIS, D. Walker (Star # 526), and UNKNOWN MARKHAM POLICE OFFICERS | ) ) ) ) ) | |
| | ) | JURY TRIAL DEMANDED |
| Defendants. | ) | |

**PLAINTIFF'S REPLY IN SUPPORT
OF HIS FIRST MOTION TO COMPEL**

Plaintiff FRANKIE BROWN, by his counsel, LOEVY & LOEVY, submits the following Reply brief in support of his First Motion to Compel Defendant City of Markham to produce information regarding a supposed confidential witness who allegedly provided information to Defendants about Plaintiff:

The thrust of Defendant's Response is that (a) Plaintiff has other means to challenge the issuance of the search warrant; (Response at 6) and (b) under *Guzman v. City of Chicago*, 242 F.R.D. 443 (N.D. Ill. 2007), Plaintiff is barred from learning the identity of the Confidential Informant. Neither of these arguments is persuasive.

There exists a workable compromise to the parties' differences – disclosure of the Confidential Informant under an attorneys' eyes only protective order. In any event, should this Court decline to grant Plaintiff's Motion to Compel, Defendants should be barred from referencing the Confidential Informant at trial.

**I.   Plaintiff Has No Other Means to Challenge the Existence of the Informant**

Plaintiff has no other means to challenge the existence of the informant other than by discovering the identity of the supposed informant. To be clear, Plaintiff is claiming that there never was any such informant who came into his house and tried to purchase narcotics. Conversely, Defendant Walker testified that there was an informant who he saw enter Plaintiff's home and exit with narcotics. Thus, the debate is not about what the confidential informant told Walker, but whether the confidential informant actually exists, whether the confidential informant ever went to Plaintiff's house, and whether the confidential informant ever purchased drugs at Plaintiff's house as Walker claims.

In its response, Defendant claims that Defendant Walker has "firsthand" knowledge regarding the existence of probable cause and, therefore, Plaintiff can simply depose him and officer Debois to learn everything regarding probable cause. It is undisputed, however, that Defendant Walker has no firsthand knowledge of any evidence that would support a finding of probable cause to believe Plaintiff was committing a crime. Contrary to Defendants' attempts to muddy this issue, Defendant Walker conclusively admitted that he never observed Plaintiff make any illegal drug transactions:

Request No. 29: You did not observe Plaintiff making any illegal drug transactions in May 2007.

Response:   Admitted.

Exhibit A (Walker's responses to Plaintiff's Second Set of Requests to Admit No. 2); *see also* Exhibit B (Walker's deposition) at 90-91 (Q: "[Y]ou had never yourself seen any unlawful activity at [Plaintiff's home], correct?" A: "Correct.").

Defendants contend that "Officer Walker conducted two controlled purchases of narcotics from plaintiff's residence." Response at 6. But Walker did not conduct any controlled drug purchases - rather, he claims that the Confidential Informant did.

The existence or absence of probable cause in this case, therefore, will turn on whether there actually was a confidential informant who entered Plaintiff's house and bought drugs from Plaintiff.

**II.     Plaintiff is Challenging the Existence of the Confidential Informant, Rather than the Reliability of Any Information He Supposedly Learned and, Therefore, the Privilege Must Yield**

As stated above, Defendant argues that this case should be decided in the same manner as *Guzman*. But a closer examination of *Guzman* demonstrates that the privilege must yield in this case.

In *Guzman*, there was no suggestion by the plaintiff that the informant was a fabrication. Rather, the *Guzman* plaintiff claimed that the police officer defendants should not have relied upon the information provided them by the informant. The court reasoned that the informant's identity was not relevant to the question whether the police officers properly relied on the information provided to them. *See Guzman*, 242 F.R.D. at 447-48. In so holding, the court explicitly noted that the existence of the informant was not at issue. *See id.* at 444 ("There is no contention that the informant

3

does not exist.").

A different result is dictated here than occurred in *Guzman*. In Guzman, the plaintiff could review the documents and information available to the police officers, and then the parties could draw their own conclusions about whether the informant's information was sufficiently reliable to support a finding of probable cause. Conversely, in this case, Plaintiff is not claiming that the information provided was too unreliable for the police officers to legitimately use; rather, he is claiming that the confidential informant never gave any information to the police because there never was an informant in the first place.

According to Defendant Walker, just hours before the search warrant was executed, the confidential informant purchased drugs at Plaintiff's house during a controlled drug transaction. Plaintiff emphatically denies both that anyone came to his house on that day to purchase narcotics, and that he actually sold drugs to anyone. In essence, Plaintiff is claiming that this supposed drug transaction is a complete fabrication by Defendant Walker.

There is evidence to support Plaintiff's contention. Although Defendant Walker claims that the Confidential Informant gave him information about Plaintiff supposedly being a drug dealer, he did not document that information anywhere. *See* Exhibit B at 53-54, 103 (Walker's deposition). Defendant Walker also claims that he provided funds to the Confidential Informant on two occasions to buy drugs from Plaintiff, but did not document anything about the supposed drug transactions that occurred. The only

thing that Defendant Walker was the fact that he paid the Confidential Informant $20 twice. *See* Exhibit C. Nothing on that form indicates which case the informant was working on, or where the narcotics were to be purchased, or from whom.

Common sense would dictate that an experienced police officer, if he truly had information provided on three separate occasions about felony drug transactions, would document the details and circumstances of that information. But we need not rely on pure common sense, because the City of Markham rules and regulations require that all such contacts be documented:

> All contacts with informants will be documented and the report will become part of the master file. Any information relating to violations of law that would be of interest to other agencies or units of the Markham Police Department will be investigated and the appropriate notification made.

Exhibit D at 3.

Plaintiff is not contending that the failure to document these supposed contacts conclusively determines that Defendants were engaged in wrongdoing. Rather, the lack of written corroboration for Defendant Walker's claims is evidence that the confidential informant may not exist.

Further, Defendant Walker claims he watched the confidential informant enter Plaintiff's home on two different days and emerge with drugs. Plaintiff denies that any such person entered his home at any time, and specifically denies that anyone trying to

purchase drugs entered his home on the dates Walker claims. *See* Exhibit E at 33 (Frankie Brown deposition transcript).

Moreover, although Plaintiff was supposedly dealing narcotics in two controlled drug buys, and supposedly narcotics were found in his house, he was brought to the police station under something marked "hold for investigation." Exhibit F. Twenty-four hours later, he was released without ever being charged with a crime.

Although Defendant claims that Plaintiff was not charged because he agreed to act as an informant, such a *quid pro quo* is prohibited by the Department's regulations. The Department's General Order states:

> Informants will sometimes offer to exchange information for immunity, leniency, or their release. These however can only be properly granted by a judge in a judicial proceeding. Neither the Department nor any member may grant any person immunity, leniency, or their release from custody. ... Informants or potential informants will not be made promises that prosecution will be declined or dismissed, or specific sentences received, but advised that legal authorities will be advised of their cooperation and asked to consider it in the pending legal matters in question.

Exhibit D at 2.

Again, Plaintiff is not claiming that this General Order conclusively establishes that Defendant Walker is lying. Plaintiff is simply saying that there is credible evidence supporting Plaintiff's version of the facts and refuting Defendant's claim that Plaintiff is merely on a "fishing expedition."

Defendants claim that Plaintiff is not alleging that the Defendants falsified information. Response at 11. But Plaintiff is claiming exactly that. The parties' joint initial status report lists the issue "[w]hether the Defendant Officers had probable cause

to arrest Plaintiff and search his home" as the very first legal issue confronting the parties.  *See* Exhibit G.  If an informant had actually purchased narcotics from Plaintiff, there is no question the Defendants would have probable cause to support a warrant for the search of his home.  Conversely, if Defendant Walker fabricated that a confidential informant purchased narcotics from Plaintiff, then no there would be no probable cause to support issuance of a warrant.

 Whether Plaintiff actually included the allegation that Defendant Walker fabricated evidence in his complaint is a red herring.  Plaintiff had no idea why officers were bursting into his house and pointing their guns at him.  To him, he did not know if the officers had the wrong house, bad information, or were trying to frame him.  It was only through discovery that Plaintiff learned that Defendant Walker was falsely claiming that Plaintiff had supposedly participated in a controlled drug buy prior to the issuance of the search warrant.

 This Motion might be very different if Plaintiff was simply saying that a snitch had falsely accused him of a crime and the police officer defendants should not have listened to the snitch because he was obviously unreliable.  In that case, like Guzman, the snitch's knowledge is superfluous because the only question is whether the police officers were entitled to *rely* on that information.  Here, there is a dispute as to whether the police officers were fabricating the existence of a confidential informant to justify their search of Plaintiff's home.

### III. An Attorneys' Eyes Only Protective Order Appropriately Limits Any Potential Harm From Disclosure

Defendant contends that a protective order is inappropriate, but fails to set forth the reasoning behind its argument. Response at 12. Defendant claims that *Autotech Tech. Ltd. P'ship v. Automationdirect.com, Inc.*, 235 F.R.D. 435 (N.D. Ill. 2006) is inapposite because that case did not involve a confidential informant. Of course, Plaintiff cited that case for the proposition that attorneys' eyes only protective orders are commonly as safeguards when confidential information must be disclosed. Motion at 7.

Defendant also claims that the protective order entered in *Hampton v. Hanrahan*, 600 F.2d 600, 639 (7th Cir. 1979), *reversed in part on other grounds*, 446 U.S. 754, is not applicable here because Plaintiff is only putting forth "unsubstantiated theories." As described above, Plaintiff is not venturing on a mere fishing expedition. More to the point, it is hardly persuasive for Defendant to refuse to participate in discovery and then claim that Plaintiff's claims are "unsubstantiated." Plaintiff has amassed evidence casting doubt on the existence of the confidential informant. Without the informant's identity, however, he can go no further.

Defendant does not address *Coleman-Johnson v. Dignan*, 1996 WL 66140, at *5 (N.D. Ill. Feb. 13, 1996), cited in Plaintiff's Motion at p. 7, in which Judge Conlon ordered production of the confidential informant under an attorneys' eyes only protective order. Defendant ignored that case because there is no reason why that same procedure cannot be used in this case. Plaintiff's attorneys are experienced and have operated under attorneys' eyes only protective orders on numerous occasions in cases

pending before this Court.

IV. **Should this Court Decline to Order Production, Defendants Should be Barred from Presenting Evidence from the Confidential Informant at Trial**

Defendant's attempt to distinguish *Manning v. Buchan*, 357 F.Supp.2d 1036 (N.D. Ill. 2004) is unavailing. Defendant claims that because the informants were more peripheral in that case, the case is distinguishable. But that is simply the reason that Judge Kennelly did not compel production of the witness during discovery. In this case, where the Confidential Informant is central to Plaintiff's probable cause-based claims, barring use of the informant is even more appropriate. It would be wholly unfair to permit Defendants to rely on the Confidential Informant at trial and leave Plaintiff totally unable to defend himself by piercing the shield erected by Defendants.

The unfairness of Defendant's position is born out by its Response. Defendant's Response details what the trial will look like if Defendant is permitted to both shield disclosure of the Confidential Informant and then use the supposed informant as a sword at trial. Response at 6-7. Under the Defendant's proposal, Plaintiff will be bound to accept Walker and Debois's testimony without being able to independently corroborate or contradict it by questioning their informant, if he or she exists. That is the antithesis of the adversarial process on which our system of justice is based.

Respectfully Submitted,

_____

Arthur Loevy
Jon Loevy
Russell Ainsworth
Matthew Jenkins
Loevy & Loevy
312 N. May St., Suite 100
Chicago, IL 60607
(312) 243-5900