1

IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE NORTHERN DISTRICT OF ILLINOIS

EASTERN DIVISION

FRANKIE BROWN,              )
        Plaintiff,          )
                            )
    -vs-                    )  No. 2007 C 6490
                            )
CITY OF MARKHAM, et al.,    )
        Defendant.          )

Videotaped deposition of Dashun Walker, taken before STACEY L. PARR C.S.R., and Notary Public, pursuant to the Federal Rules of Civil Procedure for the United States Courts pertaining to the taking of depositions for the purpose of discovery, at Suite 100, 312 North May, Chicago, Illinois, commencing at 12:20 p.m., on the 11th day of June, 2008.



EXHIBIT B

**MERRILL LEGAL SOLUTIONS**

311 S. Wacker Drive, Suite 300
Chicago, IL 60606

312.386.2000 Tel

1  before you obtained the search warrant for Frankie
2  Brown?
3      A   That conversation?  It was within six
4  months.
5      Q   Oh, within six months before?
6      A   Within six months of Frankie Brown's warrant
7  being executed.
8      Q   Okay.  Was it within a week?
9      A   Within six months, that's all I can say.
10     Q   Okay.  It could have been the day before or
11 it could have been six months before, you don't
12 remember?
13     A   I don't recall.
14     Q   Okay.  Am I correct in saying it could have
15 been the day before you went to get the warrant for
16 Frankie Brown?
17     A   No, it wasn't the day.
18     Q   Was it the week before?
19     A   The specific date in question I don't know.
20     Q   What documentation, if any, are you aware of
21 that was created after the conversation with the
22 arrestee concerning Frankie Brown?
23     A   No documentation.
24     Q   Now, did you write it down in any piece of

1   paper that the arrestee had identified Frankie Brown

2   as either a user or a seller of narcotics?

3       A   I didn't write anything down.

4       Q   Who did you tell about this information?

5       A   My partner, Officer Gonzalez.

6       Q   Who other than Gonzalez did you tell about

7   this information?

8       A   Deputy Chief Sanders.

9       Q   Okay. What did you tell Deputy Chief

10  Sanders?

11      A   That we had somebody who stated that

12  Mr. Brown was in fact selling narcotics at the

13  residence.

14      Q   And what did Sanders tell you to do, if

15  anything?

16      A   Look back into it, see if it's bona fide.

17      Q   And you did that?

18      A   Correct.

19      Q   Were you able to determine if it was bona

20  fide or not?

21      A   Yes, we did.

22      Q   Okay. How did you determine it was bona

23  fide?

24      A   By means of a confidential source.

1  A    The initial search was before the informant
2  went to the residence.  The second search was once
3  the informant returned from the residence.
4  Q    Okay.  Thank you.  Am I correct in saying
5  the only search you performed on the informant
6  before the informant went into the residence was at
7  the station?
8  A    Correct.
9  Q    Was Debois present when you did the search?
10 A    Yes.
11 Q    Anybody else present?
12 A    I don't believe so.
13 Q    What instructions, if any, did you give the
14 informant?
15 A    I told the informant to leave the station
16 walking in a northern direction until they reached
17 Nottingham, to travel eastward on foot down
18 Nottingham to the residence.
19 Q    And you knew where the residence was because
20 you had surveilled it in the past, correct?
21 A    Correct.
22 Q    And at that point in time you had never
23 yourself seen any unlawful activity at that
24 residence, correct?

1   A   Correct.

2   Q   And no police officer had ever told you they

3   had ever seen any unlawful activity at that

4   residence, correct?

5   A   Prior to that buy or...

6   Q   Prior to the time the informant walked down

7   the street to Frankie Brown's house.

8   A   Yes.

9   Q   What police officer told you they had seen

10  unlawful activity before that?

11  A   Mr. Brown had been arrested by Deputy Chief

12  Knapp.

13  Q   Okay. And that was for a weapons charge,

14  correct?

15  A   For forgery.

16  Q   For forgery. Other than that incident, had

17  you ever been aware of any unlawful activity that

18  had transpired at Frankie Brown's house?

19  A   Not offhand that I can recall.

20  Q   Well, when you saw -- you -- you were parked

21  out there yourself 15 to 20 times, correct?

22  A   Correct.

23  Q   And you didn't see any unlawful activity

24  during those 15 to 20 times, correct?

1    recovered from the informant.

2    Q   Was that the only document that you created
3    at that time?

4    A   Yes.

5    Q   You didn't create a police report saying I
6    talked to person X, I spent the last X number of
7    minutes observing him enter a home?

8    A   No.

9    Q   Nothing about -- no document confirming that
10   they had bought narcotics other than the inventory?

11   A   Well, the initial part of the search
12   warrant.

13   Q   Well, you didn't create --

14   A   The search warrant complaint.

15   Q   Well, how many days after this was it that
16   you created the search warrant complaint?

17   A   Well, I had actually started --

18   Q   Oh.

19   A   -- started it then.

20   Q   Right that day?

21   A   Yeah.

22   Q   Oh. Let's -- let's find out about that.

23   A   There it is right there.

24   Q   Right on top.