μ AN

FILED

JUL 1 5 2008
7 - 15 - 2008
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

FRANKIE BROWN, )
)
Plaintiff, ) 07 C 6490
)
v. ) JUDGE DOW
)
CITY OF MARKHAM and City of Markham )
Police Officers HARRIS, D. Walker )
(Star # 526), and UNKNOWN MARKHAM )
POLICE OFFICERS )
) JURY TRIAL DEMANDED
Defendants. )

## PLAINTIFF'S REPLY IN SUPPORT
## OF HIS FIRST MOTION TO COMPEL

Plaintiff FRANKIE BROWN, by his counsel, LOEVY & LOEVY, submits the following Reply brief in support of his First Motion to Compel Defendant City of Markham to produce information regarding a supposed confidential witness who allegedly provided information to Defendants about Plaintiff:

The thrust of Defendant's Response is that (a) Plaintiff has other means to challenge the issuance of the search warrant; (Response at 6) and (b) under *Guzman v. City of Chicago*, 242 F.R.D. 443 (N.D. Ill. 2007), Plaintiff is barred from learning the identity of the Confidential Informant. Neither of these arguments is persuasive.

There exists a workable compromise to the parties' differences – disclosure of the Confidential Informant under an attorneys' eyes only protective order. In any event, should this Court decline to grant Plaintiff's Motion to Compel, Defendants should be barred from referencing the Confidential Informant at trial.

I.    **Plaintiff Has No Other Means to Challenge the Existence of the Informant**

Plaintiff has no other means to challenge the existence of the informant other
than by discovering the identity of the supposed informant. To be clear, Plaintiff is
claiming that there never was any such informant who came into his house and tried to
purchase narcotics. Conversely, Defendant Walker testified that there was an informant
who he saw enter Plaintiff's home and exit with narcotics. Thus, the debate is not about
what the confidential informant told Walker, but whether the confidential informant
actually exists, whether the confidential informant ever went to Plaintiff's house, and
whether the confidential informant ever purchased drugs at Plaintiff's house as Walker
claims.

In its response, Defendant claims that Defendant Walker has "firsthand"
knowledge regarding the existence of probable cause and, therefore, Plaintiff can
simply depose him and officer Debois to learn everything regarding probable cause. It
is undisputed, however, that Defendant Walker has no firsthand knowledge of any
evidence that would support a finding of probable cause to believe Plaintiff was
committing a crime. Contrary to Defendants' attempts to muddy this issue, Defendant
Walker conclusively admitted that he never observed Plaintiff make any illegal drug
transactions:

Request No. 29: You did not observe Plaintiff making any illegal drug
transactions in May 2007.

Response:    Admitted.

2

Exhibit A (Walker's responses to Plaintiff's Second Set of Requests to Admit No. 2); *see also* Exhibit B (Walker's deposition) at 90-91 (Q: "[Y]ou had never yourself seen any unlawful activity at [Plaintiff's home], correct?" A: "Correct.").

Defendants contend that "Officer Walker conducted two controlled purchases of narcotics from plaintiff's residence." Response at 6. But Walker did not conduct any controlled drug purchases - rather, he claims that the Confidential Informant did.

The existence or absence of probable cause in this case, therefore, will turn on whether there actually was a confidential informant who entered Plaintiff's house and bought drugs from Plaintiff.

## II. Plaintiff is Challenging the Existence of the Confidential Informant, Rather than the Reliability of Any Information He Supposedly Learned and, Therefore, the Privilege Must Yield

As stated above, Defendant argues that this case should be decided in the same manner as *Guzman*. But a closer examination of *Guzman* demonstrates that the privilege must yield in this case.

In *Guzman*, there was no suggestion by the plaintiff that the informant was a fabrication. Rather, the *Guzman* plaintiff claimed that the police officer defendants should not have relied upon the information provided them by the informant. The court reasoned that the informant's identity was not relevant to the question whether the police officers properly relied on the information provided to them. *See Guzman*, 242 F.R.D. at 447-48. In so holding, the court explicitly noted that the existence of the informant was not at issue. *See id.* at 444 ("There is no contention that the informant

does not exist.").

A different result is dictated here than occurred in *Guzman.* In Guzman, the plaintiff could review the documents and information available to the police officers, and then the parties could draw their own conclusions about whether the informant's information was sufficiently reliable to support a finding of probable cause. Conversely, in this case, Plaintiff is not claiming that the information provided was too unreliable for the police officers to legitimately use; rather, he is claiming that the confidential informant never gave any information to the police because there never was an informant in the first place.

According to Defendant Walker, just hours before the search warrant was executed, the confidential informant purchased drugs at Plaintiff's house during a controlled drug transaction. Plaintiff emphatically denies both that anyone came to his house on that day to purchase narcotics, and that he actually sold drugs to anyone. In essence, Plaintiff is claiming that this supposed drug transaction is a complete fabrication by Defendant Walker.

There is evidence to support Plaintiff's contention. Although Defendant Walker claims that the Confidential Informant gave him information about Plaintiff supposedly being a drug dealer, he did not document that information anywhere. *See* Exhibit B at 53-54, 103 (Walker's deposition). Defendant Walker also claims that he provided funds to the Confidential Informant on two occasions to buy drugs from Plaintiff, but did not document anything about the supposed drug transactions that occurred. The only

4

thing that Defendant Walker was the fact that he paid the Confidential Informant $20 twice. *See* Exhibit C. Nothing on that form indicates which case the informant was working on, or where the narcotics were to be purchased, or from whom.

Common sense would dictate that an experienced police officer, if he truly had information provided on three separate occasions about felony drug transactions, would document the details and circumstances of that information. But we need not rely on pure common sense, because the City of Markham rules and regulations require that all such contacts be documented:

> All contacts with informants will be documented and the report
> will become part of the master file. Any information relating to
> violations of law that would be of interest to other agencies or units
> of the Markham Police Department will be investigated and the
> appropriate notification made.

Exhibit D at 3.

Plaintiff is not contending that the failure to document these supposed contacts conclusively determines that Defendants were engaged in wrongdoing. Rather, the lack of written corroboration for Defendant Walker's claims is evidence that the confidential informant may not exist.

Further, Defendant Walker claims he watched the confidential informant enter Plaintiff's home on two different days and emerge with drugs. Plaintiff denies that any such person entered his home at any time, and specifically denies that anyone trying to

5

purchase drugs entered his home on the dates Walker claims. *See* Exhibit E at 33 (Frankie Brown deposition transcript).

Moreover, although Plaintiff was supposedly dealing narcotics in two controlled drug buys, and supposedly narcotics were found in his house, he was brought to the police station under something marked "hold for investigation." Exhibit F. Twenty-four hours later, he was released without ever being charged with a crime.

Although Defendant claims that Plaintiff was not charged because he agreed to act as an informant, such a *quid pro quo* is prohibited by the Department's regulations. The Department's General Order states:

> Informants will sometimes offer to exchange information for immunity, leniency, or their release. These however can only be properly granted by a judge in a judicial proceeding. Neither the Department nor any member may grant any person immunity, leniency, or their release from custody. ... Informants or potential informants will not be made promises that prosecution will be declined or dismissed, or specific sentences received, but advised that legal authorities will be advised of their cooperation and asked to consider it in the pending legal matters in question.

Exhibit D at 2.

Again, Plaintiff is not claiming that this General Order conclusively establishes that Defendant Walker is lying. Plaintiff is simply saying that there is credible evidence supporting Plaintiff's version of the facts and refuting Defendant's claim that Plaintiff is merely on a "fishing expedition."

Defendants claim that Plaintiff is not alleging that the Defendants falsified information. Response at 11. But Plaintiff is claiming exactly that. The parties' joint initial status report lists the issue "[w]hether the Defendant Officers had probable cause

to arrest Plaintiff and search his home" as the very first legal issue confronting the parties. *See* Exhibit G. If an informant had actually purchased narcotics from Plaintiff, there is no question the Defendants would have probable cause to support a warrant for the search of his home. Conversely, if Defendant Walker fabricated that a confidential informant purchased narcotics from Plaintiff, then no there would be no probable cause to support issuance of a warrant.

Whether Plaintiff actually included the allegation that Defendant Walker fabricated evidence in his complaint is a red herring. Plaintiff had no idea why officers were bursting into his house and pointing their guns at him. To him, he did not know if the officers had the wrong house, bad information, or were trying to frame him. It was only through discovery that Plaintiff learned that Defendant Walker was falsely claiming that Plaintiff had supposedly participated in a controlled drug buy prior to the issuance of the search warrant.

This Motion might be very different if Plaintiff was simply saying that a snitch had falsely accused him of a crime and the police officer defendants should not have listened to the snitch because he was obviously unreliable. In that case, like Guzman, the snitch's knowledge is superfluous because the only question is whether the police officers were entitled to *rely* on that information. Here, there is a dispute as to whether the police officers were fabricating the existence of a confidential informant to justify their search of Plaintiff's home.

7

**III.    An Attorneys' Eyes Only Protective Order Appropriately Limits Any Potential Harm From Disclosure**

Defendant contends that a protective order is inappropriate, but fails to set forth the reasoning behind its argument. Response at 12. Defendant claims that *Autotech Tech. Ltd. P'ship v. Automationdirect.com, Inc.*, 235 F.R.D. 435 (N.D. Ill. 2006) is inapposite because that case did not involve a confidential informant. Of course, Plaintiff cited that case for the proposition that attorneys' eyes only protective orders are commonly as safeguards when confidential information must be disclosed. Motion at 7.

Defendant also claims that the protective order entered in *Hampton v. Hanrahan*, 600 F.2d 600, 639 (7th Cir. 1979), *reversed in part on other grounds*, 446 U.S. 754, is not applicable here because Plaintiff is only putting forth "unsubstantiated theories." As described above, Plaintiff is not venturing on a mere fishing expedition. More to the point, it is hardly persuasive for Defendant to refuse to participate in discovery and then claim that Plaintiff's claims are "unsubstantiated." Plaintiff has amassed evidence casting doubt on the existence of the confidential informant. Without the informant's identity, however, he can go no further.

Defendant does not address *Coleman-Johnson v. Dignan*, 1996 WL 66140, at *5 (N.D. Ill. Feb. 13, 1996), cited in Plaintiff's Motion at p. 7, in which Judge Conlon ordered production of the confidential informant under an attorneys' eyes only protective order. Defendant ignored that case because there is no reason why that same procedure cannot be used in this case. Plaintiff's attorneys are experienced and have operated under attorneys' eyes only protective orders on numerous occasions in cases

8

pending before this Court.

**IV.    Should this Court Decline to Order Production, Defendants Should be Barred from Presenting Evidence from the Confidential Informant at Trial**

Defendant's attempt to distinguish *Manning v. Buchan*, 357 F.Supp.2d 1036 (N.D. Ill. 2004) is unavailing.  Defendant claims that because the informants were more peripheral in that case, the case is distinguishable.  But that is simply the reason that Judge Kennelly did not compel production of the witness during discovery.  In this case, where the Confidential Informant is central to Plaintiff's probable cause-based claims, barring use of the informant is even more appropriate.  It would be wholly unfair to permit Defendants to rely on the Confidential Informant at trial and leave Plaintiff totally unable to defend himself by piercing the shield erected by Defendants.

The unfairness of Defendant's position is born out by its Response.  Defendant's Response details what the trial will look like if Defendant is permitted to both shield disclosure of the Confidential Informant and then use the supposed informant as a sword at trial.  Response at 6-7.  Under the Defendant's proposal, Plaintiff will be bound to accept Walker and Debois's testimony without being able to independently corroborate or contradict it by questioning their informant, if he or she exists.  That is the antithesis of the adversarial process on which our system of justice is based.

9

Respectfully Submitted,

_____

Arthur Loevy
Jon Loevy
Russell Ainsworth
Matthew Jenkins
Loevy & Loevy
312 N. May St., Suite 100
Chicago, IL 60607
(312) 243-5900

10

May-21-2008 04:4...    From LITCHFIELD CAVO LLP    ...    +312101000... ...    T-000 01 000    ...

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

FRANKIE BROWN,                          )
                                        )
                Plaintiff,              )
                                        )
        v.                              )    No. 07 C 6490
                                        )
CITY OF MARKHAM and City of Markham     )    Judge Robert M. Dow
Police Officers HARRIS, D. Walker       )
(Star #526), and UNKNOWN MARKHAM        )    Magistrate Judge Nan R. Nolan
POLICE OFFICERS,                        )
                                        )
                Defendants.             )

## DASHUN WALKER'S RESPONSES
## TO PLAINTIFF'S SECOND SET OF REQUESTS TO ADMIT

Defendant DASHUN WALKER pursuant to Rule 36 of the Federal Rules

of Civil Procedure, for his Responses to Plaintiff's Second Set of Requests to

Admit served upon him in this action on March 10, 2008, state as follows:

REQUEST NO. 1: You were acting as an agent of the Department during
your interactions with Plaintiff on May 30, 2007.

RESPONSE:        Admitted.

REQUEST NO. 2: You were acting under of color law for purposes of
Section 1983 during your interactions with Plaintiff on May 30, 2007.

RESPONSE:        Admitted.

REQUEST NO. 3: You were on duty as a Markham Police Officer during
your interactions with Plaintiff on May 30, 2007 and May 31, 2007.

RESPONSE:        Admitted.

REQUEST NO. 4: You were acting within the scope of your authority as a
Markham police officer during your interactions with Plaintiff on May 30, 2007.

RESPONSE:        Admitted.

REQUEST NO. 5: You handcuffed Plaintiff on May 30, 2007.



EXHIBIT
A

May-21-2008  04:40pm    From-LITCHFIELD CAVO LLP    Document 58-3      Filed 07/14/2008    Page 2 of 9    F-705

RESPONSE:          Denied.

   REQUEST NO. 6:  You detained Plaintiff at the Markham police station on either May 30, 2007 or May 31, 2007.

RESPONSE:          Admitted.

   REQUEST NO. 7:  Plaintiff was detained at the Markham police station on May 30, 2007.

RESPONSE:          Admitted.

   REQUEST NO. 8:  You searched Plaintiff's person on May 30, 2007.

RESPONSE:          Denied.

   REQUEST NO. 9:  You took United States currency from Plaintiff's home on May 30, 2007.

RESPONSE:          Admitted.

   REQUEST NO. 10:  You took approximately $150 from Plaintiff's home on May 30, 2007.

RESPONSE:          Admitted.

   REQUEST NO. 11:  You shone a spotlight on Plaintiff on May 30, 2007.

RESPONSE:          Denied.

   REQUEST NO. 12:  You directed another Responding Officer to shine a spotlight on Plaintiff on May 30, 2007.

RESPONSE:          Denied.

   REQUEST NO. 13:  You directed Plaintiff to stand outside his home on May 30, 2007, during the search of his home.

RESPONSE:          Denied.

- 2 -

**REQUEST NO. 14**: You learned that Plaintiff was HIV positive on May 30, 2007.

**RESPONSE**:          Denied.

**REQUEST NO. 15**:  You told Plaintiff's nephew that Plaintiff was HIV positive on May 30, 2007.

**RESPONSE**:          Denied.

**REQUEST NO. 16**:  You told one of Plaintiff's neighbors that Plaintiff was HIV positive on May 30, 2007.

**RESPONSE**:          Denied.

**REQUEST NO. 17**:  You told another Person that Plaintiff was HIV positive on May 30, 2007.

**RESPONSE**:          Denied.

**REQUEST NO. 18**:  You knew that Plaintiff was homosexual on May 30, 2007.

**RESPONSE**:          Denied.

**REQUEST NO. 19**:  You searched Plaintiff's home on May 30, 2007.

**RESPONSE**:          Admitted.

**REQUEST NO. 20**:  You told Plaintiff that if he signed an agreement to act as an Informant for the Markham police department, he could leave the Markham police station on May 31, 2007.

**RESPONSE**:          Denied.

**REQUEST NO. 21**:  You knew that there was no probable cause to believe that Plaintiff had committed a crime on May 30, 2007.

**RESPONSE**:          Denied.

- 3 -

**REQUEST NO. 22:**   You brought a videotape, the cover of which is depicted in document Bates No. 000003, outside Plaintiff's home on May 30, 2007.

**RESPONSE:**          Denied.

**REQUEST NO. 23:**   You brought the photograph depicted in document Bates No. 000002 outside Plaintiff's home on May 30, 2007.

**RESPONSE:**          Denied.

**REQUEST NO. 24:**   You heard other Responding Officers using the word "fag" during the search of Plaintiff's home on May 30, 2007.

**RESPONSE:**          Denied.

**REQUEST NO. 25:**   You used the word "fag" during the search of Plaintiff's home on May 30, 2007.

**RESPONSE:**          Denied.

**REQUEST NO. 26:**   You observed Plaintiff's neighbors watching the search of Plaintiff's home on May 30, 2007.

**RESPONSE:**          Denied.

**REQUEST NO. 27:**   You directed an individual to attempt to buy illegal narcotics from Plaintiff's home on May 29, 2007.

**RESPONSE:**          Admitted.

**REQUEST NO. 28:**   You conducted surveillance on Plaintiff's home on May 29, 2007.

**RESPONSE:**          Admitted.

- 4 -

**REQUEST NO. 29**:  You did not observe Plaintiff making any illegal drug transactions in May 2007.

**RESPONSE**:          Admitted.

**REQUEST NO. 30**:  You have no knowledge that Plaintiff was involved in any illegal drug transactions in May 2007.

**RESPONSE**:          Denied.

**REQUEST NO. 31**:  You did not find any illegal items in Plaintiff's home in May 2007.

**RESPONSE**:          Denied.

**REQUEST NO. 32**:  You arrested Plaintiff on May 30, 2007.

**RESPONSE**:          Denied.

**REQUEST NO. 33**:          Plaintiff came to the Markham police station voluntarily on May 30, 2007.

**RESPONSE**:          Defendant admits that Plaintiff went to the Markham police station on May 30, 2007 because he was arrested, but objects to the word "voluntarily" because such word is vague and unable to be answered by this Defendant.

**REQUEST NO. 34**:  Plaintiff spent the night of May 30, 2007 at the Markham police station voluntarily.

**RESPONSE**:          Defendant admits that Plaintiff spent the night of May 30, 2007 at the Markham police station, but objects to the word "voluntarily" because such word is vague and unable to be answered by this Defendant.

**REQUEST NO. 35**:  Plaintiff committed no crime in Your presence on May 30, 2007.

**RESPONSE**:          Denied.

- 5 -

Dated:  April 4th, 2008

_Dashun L. Walker_

Dashun Walker

Mitchell H. Frazen (A.R.D.C. No. 3127119)
Lauren M. Penn (A.R.D.C. No. 6280850)
LITCHFIELD CAVO LLP
303 West Madison, Suite 300
Chicago, Illinois 60606-3309
(312) 781-6618
(312) 781-8630 facsimile

- 6 -

As to Objections:

By: _____

Lauren M. Penn
LITCHFIELD CAVO LLP
One of Its Attorneys

Mitchell H. Frazen (A.R.D.C. No. 3127119)
Lauren M. Penn (A.R.D.C. No. 6280850)
LITCHFIELD CAVO LLP
303 West Madison, Suite 300
Chicago, Illinois 60606-3309
(312) 781-6618
(312) 781-6630 facsimile

STATE OF ILLINOIS      )
                       ) - SS
COUNTY OF COOK         )

     Dashun Walker being first duly sworn upon oath, deposes and states that he is a Defendant in the above captioned lawsuit; that he is familiar with the responses to the above and foregoing requests to admit facts in the above-captioned action; and subject to those objections contained therein, that those responses are true and correct.

                              Dashun Walker

Subscribed and sworn to before me
this ___ th day of April, 2008.

_____
Notary Public

Official Seal
Vita T Conroy
Notary Public State of Illinois
My Commission Expires 02/15/2011

## CERTIFICATE OF SERVICE

I, Lauren M. Penn, an attorney, certify that on April 9, 2008, I caused a copy of **DASHUN WALKER'S RESPONSES TO PLAINTIFF'S SECOND SET OF REQUESTS TO ADMIT**, to be served on the parties to whom they are addressed by having copies deposited in a United States Post Office box in a sealed envelope, proper postage prepaid, before the hour of 5:00 p.m. at 303 West Madison, Chicago, Illinois.

_____
Lauren M. Penn

1

IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE NORTHERN DISTRICT OF ILLINOIS

EASTERN DIVISION


FRANKIE BROWN,                    )

        Plaintiff,        )

                        )

    -vs-                          )  No. 2007 C 6490

                        )

CITY OF MARKHAM, et al.,   )

        Defendant.        )


      Videotaped deposition of Dashun Walker, taken

before STACEY L. PARR C.S.R., and Notary Public,

pursuant to the Federal Rules of Civil Procedure for

the United States Courts pertaining to the taking of

depositions for the purpose of discovery, at Suite

100, 312 North May, Chicago, Illinois, commencing at

12:20 p.m., on the 11th day of June, 2008.


EXHIBIT
B

**M E R R I L L    L E G A L    S O L U T I O N S**

311 S. Wacker Drive, Suite 300
Chicago, IL 60606

312.386.2000 Tel

Dashun Walker    June 11, 2008

53

1    before you obtained the search warrant for Frankie

2    Brown?

3        A    That conversation?  It was within six

4    months.

5        Q    Oh, within six months before?

6        A    Within six months of Frankie Brown's warrant

7    being executed.

8        Q    Okay.  Was it within a week?

9        A    Within six months, that's all I can say.

10       Q    Okay.  It could have been the day before or

11   it could have been six months before, you don't

12   remember?

13       A    I don't recall.

14       Q    Okay.  Am I correct in saying it could have

15   been the day before you went to get the warrant for

16   Frankie Brown?

17       A    No, it wasn't the day.

18       Q    Was it the week before?

19       A    The specific date in question I don't know.

20       Q    What documentation, if any, are you aware of

21   that was created after the conversation with the

22   arrestee concerning Frankie Brown?

23       A    No documentation.

24       Q    Now, did you write it down in any piece of

Dashun Walker     June 11, 2008

54

1 paper that the arrestee had identified Frankie Brown

2 as either a user or a seller of narcotics?

3  A I didn't write anything down.

4  Q Who did you tell about this information?

5  A My partner, Officer Gonzalez.

6  Q Who other than Gonzalez did you tell about

7 this information?

8  A Deputy Chief Sanders.

9  Q Okay.  What did you tell Deputy Chief

10 Sanders?

11  A That we had somebody who stated that

12 Mr. Brown was in fact selling narcotics at the

13 residence.

14  Q And what did Sanders tell you to do, if

15 anything?

16  A Look back into it, see if it's bona fide.

17  Q And you did that?

18  A Correct.

19  Q Were you able to determine if it was bona

20 fide or not?

21  A Yes, we did.

22  Q Okay.  How did you determine it was bona

23 fide?

24  A By means of a confidential source.

Dashun Walker    June 11, 2008

90

1    A    The initial search was before the informant

2    went to the residence.   The second search was once

3    the informant returned from the residence.

4    Q    Okay.   Thank you.   Am I correct in saying

5    the only search you performed on the informant

6    before the informant went into the residence was at

7    the station?

8    A    Correct.

9    Q    Was Debois present when you did the search?

10   A    Yes.

11   Q    Anybody else present?

12   A    I don't believe so.

13   Q    What instructions, if any, did you give the

14   informant?

15   A    I told the informant to leave the station

16   walking in a northern direction until they reached

17   Nottingham, to travel eastward on foot down

18   Nottingham to the residence.

19   Q    And you knew where the residence was because

20   you had surveilled it in the past, correct?

21   A    Correct.

22   Q    And at that point in time you had never

23   yourself seen any unlawful activity at that

24   residence, correct?

Dashun Walker    June 11, 2008

91

1      A    Correct.

2      Q    And no police officer had ever told you they

3  had ever seen any unlawful activity at that

4  residence, correct?

5      A    Prior to that buy or...

6      Q    Prior to the time the informant walked down

7  the street to Frankie Brown's house.

8      A    Yes.

9      Q    What police officer told you they had seen

10  unlawful activity before that?

11     A    Mr. Brown had been arrested by Deputy Chief

12  Knapp.

13     Q    Okay.  And that was for a weapons charge,

14  correct?

15     A    For forgery.

16     Q    For forgery.  Other than that incident, had

17  you ever been aware of any unlawful activity that

18  had transpired at Frankie Brown's house?

19     A    Not offhand that I can recall.

20     Q    Well, when you saw -- you -- you were parked

21  out there yourself 15 to 20 times, correct?

22     A    Correct.

23     Q    And you didn't see any unlawful activity

24  during those 15 to 20 times, correct?

Dashun Walker     June 11, 2008

103

1    recovered from the informant.

2        Q    Was that the only document that you created

3    at that time?

4        A    Yes.

5        Q    You didn't create a police report saying I

6    talked to person X, I spent the last X number of

7    minutes observing him enter a home?

8        A    No.

9        Q    Nothing about -- no document confirming that

10   they had bought narcotics other than the inventory?

11       A    Well, the initial part of the search

12   warrant.

13       Q    Well, you didn't create --

14       A    The search warrant complaint.

15       Q    Well, how many days after this was it that

16   you created the search warrant complaint?

17       A    Well, I had actually started --

18       Q    Oh.

19       A    -- started it then.

20       Q    Right that day?

21       A    Yeah.

22       Q    Oh.  Let's -- let's find out about that.

23       A    There it is right there.

24       Q    Right on top.

# City of Markham

16313 KEDZIE PARKWAY • MARKHAM, ILLINOIS 60426



CHIEF OF POLICE
PASCHAL CRAWFORD, JR



City Hall: (708) 331-4905
Police Dept: (708) 331-2171

### INFORMANT RECIEPT OF FUNDS

_29 MAY 2007_　　　　　$ 40 ⁰⁰

| FILE NUMBER | DATE | AMOUNT GIVEN |
| --- | --- | --- |

$

PURPOSE:　　　　PURCHASE OF EVIDENCE $ 20⁰⁰

　　　　　　　　INFORMATION & SERVICES $ 20⁰⁰

　　　　　　　　PROTECTION EXPENSES _____

I HEREBY ACKNOWLEDGE THE RECEIPT OF CONTINGENCY FUNDS IN THE AMOUNT OF
____FORTY____ AND 100/DOLLARS($ 40⁰⁰ ),PROVIDED TO ME BY

OFFICER/INVESTIGATOR _Ofc. Wilken #526_
　　　　　　　　　　NAME AND I.D. NUMBER

_Ofc. Wilken #526  29 may 07_

| Provided by: | Date | Informant | Date |
| --- | --- | --- | --- |
| (Signature & ID #) | | | |

_Wilken #526  29 may 07_

| Witnessed By | Date | Informant | Date |
| --- | --- | --- | --- |
| (Signature & ID #) | | | |

REMARKS: _____

_____

_____

_____

_____

_____

SIGNATURE OF INVESTIGATIONS SUPERVISOR　　DATE.

**EXHIBIT
C**

# City of Markham

16313 KEDZIE PARKWAY • MARKHAM, ILLINOIS 60426



CHIEF OF POLICE
PASCHAL CRAWFORD, JR.

City Hall: (708) 331-4905
Police Dept.: (708) 331-2171

INFORMANT RECIEPT OF FUNDS

30 MAY 2007          $ 40.00

FILE NUMBER          DATE          AMOUNT GIVEN

$

PURPOSE:          PURCHASE OF EVIDENCE  X  $ 20.00

INFORMATION & SERVICES  X  $ 20.00

PROTECTION EXPENSES _____

I HEREBY ACKNOWLEDGE THE RECEIPT OF CONTINGENCY FUNDS IN THE AMOUNT OF
F ORTY _____ AND 100/DOLLARS($ 40.00 ),PROVIDED TO ME BY

OFFICER/INVESTIGATOR  ofc. Walker # 526
                     NAME AND I.D. N

ofc. Walker #526  30 May 2007
Provided by:          Date          Informant          Date
(Signature & ID #)

                #526  30 May 07
Witnessed By          Date          Informant          Date
(Signature & ID #)

REMARKS:_____

_____

_____

_____

_____

002

_____
SIGNATURE OF INVESTIGATIONS SUPERVISOR    DATE.

### MARKHAM POLICE DEPARTMENT
### MARKHAM, ILLINOIS

Title: **INFORMANTS**                              Procedure: 4.204

Date Issued:  **June 4, 2004**

Revised:

C.A.L.E.A.: (4)     **17.4.2, 42.2.9**

## PURPOSE:

To provide for the confidentiality and management of informant activity, files and funds.

## POLICY:

It is important for law enforcement agencies to recognize that the use of an informant is important to the satisfactory completion of many investigations. Equally important however is the confidential nature of informant activity, identity, files and funds. It is therefore the responsibility of this Department to ensure that rigid controls are maintained when dealing with informants, and that strict guidelines are used in the control of informant funds.

## DEFINITION:

An informant is any individual who, under the direction of an officer, supplies assistance or information regarding criminal activity, usually, with an expectation of some form of compensation. The informant is different from other concerned citizens who do not work under the direction of the officer or become a party to the investigation itself.

## PROCEDURE:

A.   **ADMINISTRATION**

1.   The Criminal Investigations Unit supervisor is responsible for maintaining a master file of informants. The information in these files will be secured in a locked file cabinet with limited access to the Chief of Police, Criminal Investigations Unit supervisor and the informant's contact officer. A record of all informants used by this Department will be included in this master file. The Criminal Investigations

EXHIBIT
D

Procedure #4.204

Unit supervisor is responsible for updating and ensuring that information and documentation is current and the file is properly maintained.

2.    Information in these files will contain the following:

    a.    Markham Police Department Confidential Informant Information Record form;

    b.    photograph, except juvenile;

    c.    fingerprint card, except juvenile;

    d.    criminal history record;

    e.    copy of case reports where the informant provided information or assistance;

    f.    receipts for monies received by the informant;

    g.    any correspondence relative to the informant; and

    h.    a waiver form signed by the informant.

3.    When an officer develops an informant he will be required to provide all the necessary documentation for the master file. The Criminal Investigations Unit supervisor will assign a confidential informant number (C.I. #) to each informant in the master file. This informant control number will be used in all reports concerning the informant to protect his identity. If necessary an alias may be assigned by the Criminal Investigations Unit supervisor for later referrals or the signing of pay receipts.

4.    Officers are responsible for forwarding all reports concerning contact with their informants to the Criminal Investigations Unit supervisor, through their chain of command to initiate a new file or to update the master file. Maintenance of the file is the responsibility of the Criminal Investigations Unit supervisor. All information should be properly dated and checked for accuracy and authenticity.

B.    **RESTRICTIONS**

1.    Informants will sometimes offer to exchange information for immunity, leniency, or their release. These however can only be properly granted by a judge in a judicial proceeding. Neither the Department nor any member may grant any person immunity, leniency, or their release from custody. When an officer intends to intercede on behalf of an informant or potential informant in relation to any legal proceedings, supervisory approval is required. Informants or potential informants will not be made promises that prosecution will be declined or dismissed, or specific sentences received, but advised that legal authorities will be advised of their cooperation and asked to consider it in the pending legal matters in question.

**101**

Procedure #4.204

2.  Juvenile informants will not be used without written permission from their parent or guardian.

3.  Two (2) members of the Department must be present when working with an informant of the opposite sex.

4.  The Department will not sanction or tolerate independent criminal activity on the part of any informant.

5.  Informants will not receive money without first signing a Department receipt.

6.  Officer/Informant contacts will be of a strictly professional nature. Social or business contacts are expressly prohibited.


C.  **PRECAUTIONS**

1.  Contacts with informants should be made by at least two (2) officers when possible and practical.

2.  When a lone officer must make contact with an informant, the officer will notify his supervisor of the meeting.

3.  When meeting an informant, the officer should always select the time and place.

4.  Officers will, at all times, maintain control of the relationship between the officer and the informant, and the decisions on how to proceed with the investigation.

5.  All contacts with informants will be documented and the report will become part of the master file. Any information relating to violations of law that would be of interest to other agencies or units of the Markham Police Department will be investigated and the appropriate notification made.

6.  When using a juvenile as an informant a signed wavier must be obtained from the parent or guardian of the juvenile giving permission. The parent or guardian will be kept informed as to the specific use of the juvenile in any investigation. Officers will diligently strive to protect a juvenile informant from physical or emotional harm and will not allow the juvenile to be placed in possible danger.

7.  Informants who are to participate in an undercover purchase in which he may come into contact with Department funds, controlled substances, or anything else of potential evidentiary value will be thoroughly searched both before and after the undercover encounter, and where possible kept under continuous observation

3

102

Procedure #4.204

during the undercover operation. Searches will only be conducted by officers of the same sex as the informant.

D.    **INFORMANT FUND**

1.    The Department's budget provides for an informant fund. These funds are strictly for payments to informants and other investigative expenses.

2.    The Criminal Investigations Unit supervisor is responsible for maintaining and disbursing funds. The funds will be secured in locked cabinets accessible to only the Criminal Investigations Unit supervisor, Support Services Deputy Chief and the Chief of Police.

3.    Personnel requesting funds will document their request to their supervisor and describe the following:

    a.    case number or Confidential Informant number;
    b.    describe the reason for the request;
    c.    total funds needed and their intended use; and,
    d.    personnel involved in the investigation.

4.    All requests must be approved by the Criminal Investigations Unit supervisor and the Support Services Deputy Chief or the Chief of Police. The Criminal Investigations Unit supervisor is authorized to disburse funds in the case of an emergency. However, the Criminal Investigations Unit supervisor will contact the Chief of Police or the Support Services Deputy Chief as soon as possible after the emergency.

5.    The Criminal Investigations Unit supervisor will maintain a ledger to record all transactions from the fund. Whenever money is disbursed the following information will be recorded:

    a.    date of transaction;
    b.    amount of money disbursed;
    c.    name of person signing for receipt of money;
    d.    reason for disbursement;
    e.    confidential informant number, if applicable; and
    f.    balance on hand.

6.    The Criminal Investigations Unit supervisor will use the following criteria whenever funds are paid out to an informant:

    a.    previous history of providing accurate information;
    b.    reliability of the informant;

**103**

Procedure #4.204

    c.    type of information provided;

    d.    seriousness of the crime; and,

    e.    the probability of an arrest and conviction.

7.    Informants must sign a Fund Receivable form whenever money is disbursed from the informant fund. An alias may be used by the informant if assigned by the Criminal Investigations Unit supervisor and logged on the master file. The form will then be forwarded to the Criminal Investigations Unit supervisor to be included in the informant's master file.

8.    Any funds expended from the fund and not used will be returned with an explanation for the return.

9.    The Criminal Investigations Unit supervisor will submit quarterly audits of the informant fund to the Chief of Police through the Support Services Deputy Chief.

10.    The Criminal Investigations Unit supervisor is responsible for the continuous accounting of the fund and will submit an annual audit, in January, to the Chief of Police through the Support Services Deputy Chief summarizing all expenditures from the fund.

11.    The Chief of Police, or his designee, will periodically conduct unannounced audits of this fund. The audit will:

    a.    ensure that all funds have been accounted for with accurate and clear documentation;

    b.    ensure adherence to the requirements set forth in this procedure; and,

    c.    check that proper control measures are being followed.

E.    **CENSURING AN INFORMANT**

1.    In the event continued use of an informant would prove to be detrimental to the goals of the Department or to the safety of its officers, or when an informant is found to be otherwise unreliable, and in the opinion of the officer, should not be used, the relationship between the informant and the Department will be terminated.

2.    The officer will submit a report indicating the reasons why the informant should no longer be utilized.

**104**

Procedure #4.204

3.    Upon receipt of this report the Criminal Investigations Unit supervisor will write the word "Censure" on the cover of the informant's master file and date and initial it.

4.    The officer directly involved with the informant has the responsibility to notify any other officers, units or agencies that the informant is no longer reliable.

**BY ORDER OF**

**CHIEF OF POLICE**

6

**105**

1

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

FRANKIE BROWN,                    )
                                  )
            Plaintiff,            )
                                  )
     vs.                          )   Case No. 07 C 6490
                                  )
CITY OF MARKHAM and               )
CITY OF MARKHAM POLICE            )
OFFICERS HARRIS, D.               )
WALKER (STAR 526) and             )
UNKNOWN MARKHAM POLICE            )
OFFICERS,                         )
                                  )
            Defendants.           )

          The deposition of FRANKIE BROWN, called

for examination, taken pursuant to the Federal

Rules of Civil Procedure of the United States

District Courts pertaining to the taking of

depositions, taken before KIMBERLY WINKLER

CHRISTOPHER, CSR No. 084-00275, Certified

Shorthand Reporter of the State of Illinois, at

303 West Madison Street, Suite 300, Chicago,

Illinois, on the 30th day of May, A.D. 2008,

at 11:09 a.m.



EXHIBIT
E

**Ambassador Legal Services**
**800-486-9868**

1    arrived to your home on May 30th?

2        A.    Correct.

3        Q.    Other than Jermaine Smith, did you have

4    any other guests at your house on May 30th?

5        A.    No.

6        Q.    Do you recall your activities on May

7    30th?

8        A.    Yes.

9        Q.    From the moment you woke up --

10       A.    Yes.

11       Q.    (Continuing) -- to the time the police

12   officers arrived at your house?

13       A.    Yes.

14       Q.    What were your activities?

15       A.    I got up; I had breakfast; I took my

16   medication, and Jermaine came over.

17       Q.    Did Jermaine fix the bench?

18       A.    We tried already.

19       Q.    Where was the bench located?

20       A.    Outside.

21       Q.    In the front yard or your backyard?

22       A.    Backyard.

23       Q.    How long were you attempting to work on

24   the bench?

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| FRANKIE BROWN, | ) | |
| | ) | |
| Plaintiff, | ) | 07 C 6490 |
| | ) | |
| v. | ) | JUDGE DOW |
| | ) | |
| CITY OF MARKHAM and City of Markham | ) | |
| Police Officers HARRIS, D. Walker | ) | |
| (Star # 526), and UNKNOWN MARKHAM | ) | |
| POLICE OFFICERS | ) | |
| | ) | JURY TRIAL DEMANDED |
| Defendants. | ) | |

## JOINT INITIAL STATUS REPORT

Plaintiff FRANKIE BROWN, by his counsel, LOEVY & LOEVY, and Defendants,

CITY OF MARKHAM and City of Markham Police Officers HARRIS, and D. WALKER

(Star # 526), by their attorneys, LITCHFIELD CAVO, LLP, jointly submit the following

Status Report:

### A.    NATURE OF THE CASE

Plaintiff alleges that Defendant Officers Harris and Walker, along with several
unnamed Markham police officers, unreasonably entered his house and subjected him
to numerous homophobic slurs, including "I'll sleep better tonight knowing there is one
less fag on the street"; "He is one of those dick-in-the-booty boys"; and "What does a fag
like you need with a lawyer." The Defendant Officers then made Plaintiff stand
handcuffed outside his house with a police spotlight shining on him and an explicit
homosexual video cover while the Defendant Officers loudly repeated the slurs to his
neighbors and revealed to them the private fact that Plaintiff was HIV positive. Plaintiff
alleges that this abuse continued for over an hour and was undertaken because of his
sexual orientation, thereby depriving him of his right to equal protection of the law and
his right to be free of unreasonable searches and seizures, as well as violating the Illinois
Hate Crime statute. Plaintiff further alleges that he was falsely arrested when he was
imprisoned at the Markham police station despite the fact that no contraband was



EXHIBIT
F

found in his house and he committed no crime. Plaintiff has also lodged claims for several other related federal and state law claims (including a claim for the alleged theft of $150 from his person), and a *Monell* claim against the City of Markham. Defendants deny liability for any of the acts of which they are accused.

B.    **Factual and Legal Issues.**

    1.    **Principal Legal Issues.**

        The principal legal issues are:

        (1)    Whether the Defendant Officers had probable cause to arrest Plaintiff and search his home;

        (2)    Whether the Defendant Officers' detention of Plaintiff was reasonable;

        (3)    Whether Plaintiff can satisfy the requirements of a policy claim under federal law as to any of Defendants' alleged constitutional violations as described in her Complaint;

        (4)    Whether Plaintiff can satisfy the elements of an equal protection claim under the United States Constitution;

        (5)    Whether Plaintiff can satisfy the elements of a §1983 or §1985(3) civil conspiracy claim; and

        (6)    Whether Plaintiff can satisfy the elements of a claim under the Illinois Hate Crime statute.

    2.    **Principal Factual Issues.**

        The principal factual issues are:

        (1)    Whether the Defendant Officers had probable cause to believe Plaintiff had committed a crime or was in the act of committing a crime;

        (2)    Whether the Defendant Officers had a valid search warrant to enter Plaintiff's home;

2

(3)    Whether Plaintiff was indeed held outside of his home with a spotlight on him and a pornographic homosexual video cover;

(4)    Whether the Defendant Officers used homosexual slurs when speaking to and about Plaintiff; and

(5)    The nature and extent of Plaintiff's alleged physical and emotional injuries.

**C.    Settlement Discussions:**

The parties have not engaged in settlement discussions to date.

**D.    Discovery Taken to Date and Anticipated in the Future:**

The parties have not yet participated in any discovery. The parties anticipate that the necessary fact discovery will include written discovery as well as depositions which shall include depositions of the parties, third party witnesses, Fed.R.Civ.P. 30(b)(6) witnesses, totaling approximately fifteen to twenty depositions. The parties propose to report to the Court at the close of fact discovery regarding the scope and timing of expert discovery, if the parties determine at that time that they will be engaging in expert discovery.

**E.    Potential Motions to be Filed:**

Plaintiff does not anticipate filing any motions at this time.

RESPECTFULLY SUBMITTED,

/S/ Russell Ainsworth
ATTORNEYS FOR PLAINTIFF

Arthur Loevy
Jon Loevy
Russell Ainsworth
Matthew Jenkins
LOEVY & LOEVY
312 North May St.
Suite 100
Chicago, IL 60607
(312) 243-5900

/S/ Lauren Penn
ATTORNEYS FOR CITY OF MARKHAM
AND THE DEFENDANT OFFICERS

Mitchell Frazen
Lauren Penn
LITCHFIELD CAVO, LLP
303 W. Madison
Suite 300
Chicago, IL 60606
(312) 781-6618

4

IR NUMBER _07 - 9885_

# MARKHAM POLICE DEPARTMENT
## PRISONER INFORMATION FORM

| NAME     LAST     FIRST     M | SEX | RACE | DOB |
|---|---|---|---|
| Brown, Frankie | M | Blk | 11 OCT. 50 |

| DATE AND TIME OF ARREST | CHARGE |
|---|---|
| 30 May 2007  2230 Hrs | P. C. S. / Search Warrant |

| ARRESTING OFFICER | STAR # |
|---|---|
| Ofc D. Walker | 526 |

(PLACE AN X IN THE APPROPIATE BOX)

PRISONER PLACED IN CELL      [ 1 ]   [ 2 ]   [ 3 ]   [ 4 ]   [ JUV ]

SPECIAL INSTRUCTIONS                    IF ARRESTEE IS JUV CHECK HERE      [      ]

TACT
~~MFD~~ HOLD          [ X ]  hold

PATROL               [      ]          PARENTS SIGNATURE

MEDICATIONS          [      ]          _____

NO PHONE CALLS       [      ]

MISC _____

_____

_____

| RELEASE BY | DATE | TIME |
|---|---|---|
| D. Walker | 31 May 07 | 20:00 HRS |

**EXHIBIT**
**G**

PRISONER SHEET CONT. ON OTHER SIDE